Vincent A. Lupiano, J.
This is a proceeding under article 78 of the Civil Practice Act to set aside the cancellation of a retail liquor store license issued to Willmont Liquors, Inc. It is brought by Willie H. Mays, Jr., as a stockholder of the said corporation owning 50% of the issued and outstanding shares, against the State Liquor Authority and its members. There are no other parties to the proceeding. Although the petitioner purports to act, and the caption of the proceeding so indicates, not merely in behalf of himself as a stockholder but also in behalf of the corporation, this is in fact not a representative proceeding and the corporation has not been joined either as petitioner or as respondent, directly or by indirection.
*629 The petitioner Mays and Montford Irvin each own 25 shares of the common stock of Willmont Liquors, Inc. No more than 50 shares were issued. Irvin is the president, treasurer and secretary. Mays is the vice-president. There are no other officers. Purporting to act in behalf of the corporation, and as its president, Irvin entered into an agreement with Camp-Penn Liquors, Inc., for the sale by Willmont Liquors, Inc., to Camp-Penn Liquors, Inc., of the liquor store business owned by Willmont Liquors, Inc., which was the latter’s sole asset. Upon learning of this proposed sale, Mays notified the State Liquor Authority that he had not consented to it and that the sale was unauthorized since two thirds of the stockholders had not sanctioned it. The Authority called a conference, at which á member of its legal bureau was present as were counsel for the two stockholders, Mays and Irvin, and also the attorneys for the prospective buyers. It is conceded that Mays’ counsel was asked by a representative of the Authority 1 ‘ how much time he would want within which to bring an action to stay the proposed sale,” but counsel did not make a definite reply to this question.
On the same day, March 28, 1957, Mays’ attorney wrote to the Authority stating “ First, I believe that I should be informed as to whether the State Liquor Authority intends to approve or reject the application presently pending before it so that I may be guided accordingly in determining whether the institution of an action for a stay is necessary. Second, if despite the information imparted to it, the State Liquor Authority intends to approve the application, I believe that I should be given sufficient advance notice thereof so as to permit me to institute such action in the interim as I may deem to be necessary in order to protect the interest of my client. ’ ’
By telegram dated March 29, 1957, the Authority advised Mays’ attorney, “ Camp-Penn Liquors, Inc. application approved. License will be issued upon surrender of seller’s license. ’ ’
By telegram dated March 30, Mays’ attorney informed the Authority that “ the board of directors of Willmont Liquors, Inc. had not authorized the surrender of its license and notice is hereby given to you not to accept the same in the event of a tender thereof.”
On April 2, 1957, the Authority accepted the surrender of the license accompanied by a petition bearing the certification “ Monte Irvin certifies that he is President of the above named corporation which made and executed the above petition; that *630 he signed his name thereto by order of the Board of Directors of said corporation; that he knows the contents thereof and the statements contained therein; and the same are true to his own knowledge.” Petitioner contends that as there had been no duly authorized surrender of the license, the Authority should not have cancelled it and that such cancellation was not permissible under section 127 of the Alcoholic Beverage Control Law, which, of course, provides for a cancellation of a license upon its voluntary surrender by the holder.
The thought at once suggests itself that a retail liquor license is of no use whatever if the licensee has no place in which to conduct its business. If the cancellation of the liquor license originally issued to Willmont Liquors, Inc., were to be set aside by this court, it would be of no avail, as that corporation to all intents and purposes is out of business. It has given up its store and stock in trade. In this circumstance the State Liquor Authority should not involve itself in an intracorporate controversy between stockholders, who as erstwhile teammates, the Authority contends, now collaborate to engineer the old “ squeeze play ” — the object, of course, to drive home another retail liquor store license. Factually, the control of the corporation is equally divided between Mays and Irvin, who appear to be at loggerheads. Whether the corporation should be permitted to continue in existence with such an impasse is a matter to be determined in a proper action to which the corporation is a party and in which both stockholders may be heard. It may or may not be able to function in the future, and continuation of the corporate business may or may not be detrimental to the best interests of the corporation, its stockholders and creditors. It is clear that a necessary party, the corporation itself, is lacking here, and perhaps also Irvin individually should be a party (see Civ. Prac. Act, § 1290). As this is not a proper proceeding in which to determine the best interests of the corporation and for the adjustment of the competing or conflicting aims of its two shareholders, the proceeding should be dismissed rather than enlarged to include the corporation and both its shareholders. It will be time enough to determine whether the license should be restored to the corporation after the Supreme Court, exercising its visitorial powers over domestic corporations, has decided whether the sale should be invalidated.
Viewed realistically, the question whether the corporation should have a license for the conduct of a retail liquor business is not of immediate moment. The important thing to decide is *631 whether the corporation should be allowed to continue in business or whether the sale which Irvin undertook to effect may stand. The fact that the petitioner refuses to institute a proper action against the corporation and Irvin (in which perhaps the State Liquor Authority could be joined as an additional party defendant — that point I need not and do not now determine) casts doubt upon his good faith. Instead of having his rights determined once and for all in a proper and all-inclusive action the petitioner gives the impression of trying merely to continue the impasse, to stymie his partner, Irvin, and the purchaser by depriving the latter of a license to operate the business. Obviously there cannot be two licenses for the same premises, one belonging to Willmont Liquors, Inc., and the other to the purchaser. If the court were to go along with the petitioner in this seeming attempt to put a road block in the way of Irvin and of the purchaser, it may be that the latter would find themselves at the petitioner’s mercy. But no constructive solution of the controversy would be effected. Irvin and the purchaser would simply have to come to the petitioner and meet his terms, whatever they might be, or else themselves institute an action in the Supreme Court. Thus, the petitioner would relieve himself of all burdens of suit and of proof. This court should not aid bim to accomplish this merely obstructive purpose.
Assuming even that the petitioner has a clear legal right in the premises, the court may exercise its discretionary power to refuse to act. An order under article 78 of the Civil Practice Act “ is primarily one resting in the sound discretion of the court, and only where the case presented shows no room for the exercise of a reasonable discretion may it be held, as a matter of law, that there has been an abuse of discretion. While not exclusive, certain recognized cases of inequities present defenses to the issuance of the order ” (Matter of Coombs v. Edwards, 280 N. Y. 361, 364-365). In the circumstances herein-above narrated it would be in an improvident exercise of discretion for this court to issue a mandatory order which would achieve nothing constructive and would delay if not altogether prevent the ultimate determination of the rights of all parties, and perhaps also of creditors. The petitioner has not sustained the burden of demonstrating the necessity and propriety of the order which he seeks, and which, as the cited case indicates, is to be granted only if other remedies fail. Even then the court may consider the hardship and injustice to the parties involved as well as the conduct of the petitioner and the interests of third persons.
*632 Accordingly, this petition brought under article 78 of the Civil Practice Act is dismissed on motion of the respondents, the State Liquor Authority and its members, and the application of the petitioner for an order under article 78 of the Civil Practice Act is denied.
Settle order on notice.